IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

LINDA LONG

    v.

WELCH & RUSHE, INC.

    :
    :
    :   Civil Action No. DKC 13-3712
    :
    :
    :

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this sexual harassment case are the motion to dismiss Defendant's counterclaim (ECF No. 15), and a motion to strike Defendant's affirmative defenses (ECF No. 16), both filed by Plaintiff Linda Long. The issues have been fully briefed, and the court now rules, no hearing being deemed necessary. Local Rule 105.6. For the following reasons, Plaintiff's motion to dismiss will be denied. Plaintiff's motion to strike affirmative defenses will be granted in part and denied in part.

## I. Background

On December 9, 2013, Plaintiff Linda Long filed a complaint against Defendant Welch & Rushe, Inc. ("Welch & Rushe" or "Defendant"), alleging various violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* According to the complaint, Plaintiff had a romantic relationship in the early nineties with David Welch, the Chief Executive Officer of

Welch & Rushe.   (ECF No. 1 ¶ 6).   Plaintiff asserts that in
October 2010, long after their romantic relationship ended, Mr.
Welch contacted her to offer her a job with his company as a
sales representative in the service department.   Plaintiff
accepted the position and was employed with Welch & Rushe as a
sales representative from October 10, 2010 to April 27, 2012.
(ECF No. 1 ¶ 6).   Plaintiff states that:

> [b]eginning in February of 2011, Mr. Welch
> made attempts at reigniting a sexual
> relationship with Ms. Long.   Mr. Welch's
> unwanted sexual advances included sexually
> explicit gestures, comments, and text
> messages to Ms. Long's work-issued phone.
> Mr. Welch progressed cautiously, exercising
> typical sexual harasser behavior by testing
> Ms. Long's boundaries, starting with
> innocuous physical contact such as hugs, and
> then quickly escalating to inappropriate
> sexual advances.

(*Id.* ¶ 10).   Plaintiff alleges that in the summer of 2011, Mr.
Welch began using his position as CEO to force Ms. Long into
interactions with him.   (*Id.* ¶ 16).   Plaintiff states that she
feared that if she opposed Mr. Welch's demands, she would lose
her job.   Plaintiff avers that on August 26, 2011, Mr. Welch
requested her presence in his office and made sexual advances
toward her.   Plaintiff states that "under the continued
pressure, and with the hope that compliance would free her from
Mr. Welch's constant harassment, Ms. Long finally complied and
reluctantly performed oral sex on Mr. Welch."   (*Id.* ¶ 18).

Plaintiff asserts that in September and December 2011, Mr. Welch again demanded Plaintiff's presence in his office and made sexual advances at her.  She states that in December 2011, Mr. Welch attempted to pull Plaintiff into the bathroom in his office, Ms. Long resisted "and ultimately screamed to get away." (*Id.* ¶ 19).  The next day, "Mr. Welch took action against Ms. Long by transferring her out of her position as a sales representative and into a less desirable position with little to no responsibilities."  (*Id.* ¶ 20).  Ms. Long states that Defendant terminated her on April 27, 2012, citing a company-wide reduction in workforce.  (*Id.* ¶ 21).  Plaintiff filed a charge with the EEOC on September 13, 2012 (ECF No. 20-1) alleging sex discrimination and retaliation, and the EEOC issued a right to sue letter on September 26, 2013 (ECF No. 20-2). Plaintiff filed a complaint in this court on December 9, 2013, asserting claims under Title VII for hostile work environment, *quid pro quo* harassment, and retaliation.

On January 27, 2014, Defendant filed an answer and counterclaim.  (ECF No. 7).  The answer includes ten affirmative defenses.  In the counterclaim, Defendant asserts that during her employment with Welch & Rushe, Ms. Long received a copy of the employee manual, which contained certain company policies. Defendant contends that it learned in early 2012 that Ms. Long was using her company vehicle for personal trips in violation of

company policy, "including the Use of Equipment and Vehicles policy." (ECF No. 7, at 8). Defendant states that about a month later, "Welch & Rushe's Fleet Manager conducted a random routine audit of ten Company vehicles and discovered that Ms. Long had been using her corporate credit card for personal expenses." (*Id.*). Welch & Rushe states that it discovered "that Ms. Long used her corporate credit card to buy more fuel tha[n] her vehicle could actually hold and at times when the GPS revealed her car was parked at home. . . . In other words, Ms. Long used her corporate credit card to put gas into another vehicle." Defendant conducted a full investigation which revealed "at least [twenty-four] instances of use of the corporate credit card for non-business purposes and instead for Ms. Long's personal benefit." Defendant did not terminate Plaintiff after this investigation, although she was later terminated on April 27, 2012. Defendant also states that after Ms. Long was terminated, she began making false accusations of harassment and discrimination against them. (*Id.* at 9). It further asserts that "[a]fter filing a charge of discrimination with the EEOC containing detailed and false allegations virtually identical to those in her [c]omplaint, Ms. Long contacted current and former Welch & Rushe employees, including former management personnel, and restated her false allegations to those individuals." (*Id.*).

4

Defendant asserts the following six counterclaims: (1) malicious defamation; (2) negligent defamation; (3) false light; (4) conversion; (5) trespass to chattels; and (6) unjust enrichment.   On February 14, 2014, Plaintiff filed motions to dismiss the counterclaims and to strike some of the affirmative defenses.   (ECF Nos. 15 & 16).   Both motions have been fully briefed.

## II. Analysis

### A.   Plaintiff's Motion to Dismiss Counterclaims

Plaintiff argues that the counterclaims should be dismissed for multiple reasons.   Plaintiff asserts that conversion, trespass to chattels, and unjust enrichment counterclaims do not arise out of the same set of operative facts that make up the Title VII claims, thus they must be dismissed for lack of subject matter jurisdiction.   Plaintiff contends that the malicious defamation, negligent defamation, and false light counterclaims are either time-barred or precluded by absolute judicial privilege.

### 1.   Conversion, Trespass to Chattels, and Unjust Enrichment (Counterclaims IV-VI)[1]

Because the court has neither federal question nor diversity jurisdiction over the counterclaims, 28 U.S.C. § 1367(a) provides the only possible basis for jurisdiction.

---

[1] The parties refer to these counterclaims as the "theft-based counterclaims."

Supplemental jurisdiction exists under that provision over "claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." There is no dispute that compulsory counterclaims are, by definition, within the supplemental jurisdiction of the court. *Painter v. Harvey*, 863 F.2d 329, 331 (4th Cir. 1988).[2] A compulsory counterclaim "arises out of the transaction or occurrence that is the subject matter of the opposing party's claim." Fed.R.Civ.P. 13(a).

Determining whether counterclaims are compulsory or permissive requires four separate inquiries:

> (1) Are the issues of fact and law raised in the claim and counterclaim largely the same? (2) Would res judicata bar a subsequent suit on the party's counterclaim, absent the compulsory counterclaim rule? (3) Will substantially the same evidence support or refute the claim as well as the counterclaim? and (4) Is there any logical relationship between the claim and counterclaim?

---

[2] While the Fourth Circuit has also said that permissive counterclaims do not fall within the court's supplemental jurisdiction, that view is apparently not unanimous. *See, e.g., Marchand v. Chase Bank USA, N.A.*, No. CV 10-09805 DDP (JCx), 2011 WL 1296711 (C.D.Cal. 2011). Nor is it entirely clear whether the tests for supplemental jurisdiction and compulsory counterclaims are "equivalent," *see Williams v. Long,* 558 F.Supp.2d 601, 603 n.1 (D.Md. 2008), or whether one is "more stringent" than the other, *see Branhaven, LLC v. Beeftek, Inc.*, 965 F.Supp.2d 650, 662 (D.Md. 2013). In this case, because the counterclaims at issue are compulsory, it is not necessary to resolve those issues.

*Painter*, 863 F.2d at 331.   It is not necessary to "answer all these questions in the affirmative for the counterclaim to be compulsory"; rather, the inquiries serve as a "guideline."   *Id.* "Where . . . the same evidence will support or refute both the claim and counterclaim, the counterclaim will almost always be compulsory."   *Id.* at 332.   This "same evidence" test, however, is not "the exclusive determinant of compulsoriness under [Rule 13(a)] because it is too narrow a definition of a single transaction or occurrence."   A counterclaim may arise from the same "transaction or occurrence," and thus be compulsory under Rule 13(a), "even though the evidence needed to prove the opposing claims may be quite different."

Plaintiff asserts that the counterclaims in counts IV through VI are permissive, rather than compulsory, thus the court lacks subject matter jurisdiction.   (ECF No. 15, at 9). Plaintiff believes that "[t]here are little to no overlapping issues of fact and no overlapping issues of law between Ms. Long's claims under Title VII and Defendant's theft-based counterclaims."   (ECF No. 15, at 11).   Plaintiff asserts that the only link between the Title VII claims and the three "theft-based counterclaims" is the parties' employment relationship, which is insufficient to establish jurisdiction.   Plaintiff argues that "[w]hile Ms. Long's claims will focus on the

establishment of the president's conduct, its impact on Ms. Long, personally and professionally, and the countering of Defendant's rebuttal, Defendant's counterclaims would require extensive factual investigations into Ms. Long's alleged improper use of her corporate card and why Defendant failed to act internally or judicially on the matter." (*Id.* at 12).

Defendant counters that the counterclaim will require "the same witnesses, relate to the same set of underlying facts, and occurred over less than a two year time period." (ECF No. 19, at 11-12). Defendant explains:

> [t]he claims each involve the Plaintiff's propensity for lying both during and after her employment. Further, the facts necessary to defend against Plaintiff's claims of sexual harassment and retaliation are grounded in Welch & Rushe's Theft Related Claims because Plaintiff was terminated as part of a reduction in work force. *Her selection for termination pursuant to this reduction was based on a number of factors, one of which was Plaintiff's prior performance and work history, which included her then-recent theft of company property for personal use.*

(*Id.* at 12) (emphasis added). Defendant points out that Plaintiff's termination occurred "mere months after Welch & Rushe discovered that she had converted company property for her personal use." (*Id.*).

Plaintiff asserts three claims under Title VII: hostile work environment sexual harassment; *quid pro quo* sexual

harassment; and retaliation.   As to the *quid pro quo* sexual harassment claim, once a *prima facie* showing is made, an inference of discrimination arises and the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for the employment action in question.   *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-03 (1973).   Similarly, if Plaintiff makes a *prima facie* case of retaliation, the burden shifts to the employer to offer a non-discriminatory basis for the adverse employment action.   *See Matvia v. Bald Head Island Mgmt., Inc.*, 259 F.3d 261, 271 (4th Cir. 2001).   Defendant takes the position that Plaintiff's alleged misuse of company property played a role in its decision to terminate her.   Thus, the facts supporting the "theft-based counterclaims" will also make up Defendant's affirmative defense to the Title VII claims of legitimate non-discriminatory reasons.

Plaintiff responds that "Defendant's attempt to tie its theft-related claims to Ms. Long's claims of sexual discrimination by now claiming that the alleged theft played a part in Ms. Long's terminate is a ruse, and should be granted no value."   (ECF No. 24, at 8).   Plaintiff points to a letter from defense counsel to the EEOC setting forth "the preliminary position statement of [Defendant] in response to Charging

Party's Charge." (ECF No. 24-1, at 1).[3]  In this letter, defense counsel stated that Ms. Long was *not* terminated as a result of her alleged use of company property for her personal use. (*Id.* at 2).[4]  Plaintiff attempts to use this position statement to refute Defendant's current argument that the facts surrounding the "theft-based counterclaims" will be used to show legitimate, non-discriminatory reasons for termination.  Plaintiff places too much weight on this letter.  Indeed, defense counsel stated in the opening paragraph that "[t]his letter will constitute the *preliminary* position statement." (*Id.* at 1) (emphasis added). Furthermore, the letter includes the following disclaimer:

> [i]n submitting this position statement, Respondent does not intend to waive any defenses it may have to the Charge or in any way prejudice itself with respect to any issue, whether of a procedural or substantive nature.  In addition, the *information contained herein is being submitted on the basis of the author's current understanding of the facts, which*

---

[3] The letter may be considered on a motion to dismiss for lack of subject matter jurisdiction. *See Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991).

[4] Defense counsel explained that Defendant decided to confront Ms. Long, "and [] if she admitted improper use of the card, her gas card and car privilege would be suspended. . . . If, however, she denied the abuse, she would be terminated." (ECF No. 24-1, at 2).  When confronted, Ms. Long claimed that her husband stole the card and used it without her knowledge. Defendant decided to reduce her privileges as a proportionate response, but stated in the letter to the EEOC that it did not terminate her based on this incident.

> *could change as more information is gathered.*

(*Id.* at 1 n.1) (emphasis added).  Thus, Defendant's statement that Plaintiff was not terminated on the basis of the alleged use of company property for personal use in this preliminary position statement does not necessarily negate its current argument that the alleged use of company property played a role in the decision to terminate Plaintiff.  In the answer to the complaint, Defendant cited a reduction in workforce as a reason for terminating Plaintiff.  In the preliminary position statement, Defendant represented that it evaluated the amount of income generated by each employee and identified five individuals to let go, including Ms. Long.  (*Id.* at 3).  In the opposition to Plaintiff's motion to dismiss the counterclaims, Defendant states that it "will defend the termination on the grounds that Plaintiff was terminated as part of a reduction in work force based on a number of factors *including her disciplinary action*."  (ECF No. 19, at 14) (emphasis added). Plaintiff's ability to recover under Title VII appears to be at least partially dependent on her ability to rebut Defendant's legitimate non-discriminatory reason for Ms. Long's termination. *See, e.g., Harrison v. Grass*, 304 F.Supp.2d 710, 714 (D.Md. 2004) ("while the legal and factual issues may not be 'largely' the same, there are significant points of overlap.  In

11

particular, questions as to whether [plaintiff] stole and why he was expelled are likely to bear importantly on both sets of claims."); *Hosp. Bldg. Co. v. Trustees of Rex Hosp.*, 86 F.R.D. 694, 696 (E.D.N.C. 1980) ("if essential facts alleged by one party enter into and constitute a part of the cause of action set forth in the opposing party's counterclaim, that counterclaim is compulsory even though it may not be precisely identical to the federal cause of action and even though the counterclaim embraces additional allegations."). Based on the foregoing, the first inquiry under *Painter* counsels against dismissing these counterclaims.

With regard to the second inquiry – whether *res judicata* would bar the "theft-based counterclaims" if not asserted in the present action – this factor is not conclusive as to whether the counterclaim is permissive or compulsory. In Maryland, the doctrine of *res judicata*:

> bars the litigation of a claim if (1) the parties in the present litigation are the same or in privity with the parties to the earlier litigation; (2) the claim presented in the subsequent action is 'identical to that determined or that which could have been raised and determined in the prior litigation'; and (3) there was a final judgment on the merits in the prior litigation.

*Williams*, 558 F.Supp.2d at 605. Even if full and fair adjudication of the Title VII claims would not preclude

Defendant from later asserting the "theft-based counterclaims," "the res judicata test cannot be the controlling one." *Painter*, 863 F.2d at 333.  The United States Court of Appeals for the Fourth Circuit has observed, "[i]f the limits of the compulsory counterclaim are no broader than res judicata, then [Rule 13(a)] would be superfluous."  *Id.*

As to the third inquiry, Defendant asserts that the claims in the complaint and the counterclaims will require nearly identical evidence and witnesses.  It argues that "Welch & Rushe will present evidence of [Plaintiff's] theft related actions and disciplinary history" in lodging the defense of legitimate, non-discriminatory reasons for the adverse employment decision. (ECF No. 19, at 14).  It is likely that there will be at least some overlapping evidence used to support the defense of legitimate non-discriminatory reasons and the "theft-based counterclaims."  There is no reason to duplicate consideration of this evidence.  As stated in an Eastern District of North Carolina case cited favorably in *Painter*, "it would appear that substantial evidence will be introduced that both supports the counterclaim . . . and simultaneously refutes [] plaintiff's claim." *Hosp. Bldg. Co.*, 86 F.R.D. at 698.

Finally, a logical relationship exists between the Title VII claims and the "theft-based counterclaims."  Contrary to Plaintiff's position, the employment relationship between the

parties is not the only common thread between the claims and "theft-based counterclaims." As Defendant points out, "the theft based claims are part of Welch & Rushe's defense to Plaintiff's federal law claims." (ECF No. 19, at 15). Although the elements needed to prevail on counterclaims four, five, and six are quite obviously different from what is needed to prevail on the Title VII claims, Defendant's version of events – that Plaintiff misused company property and this behavior contributed to the ultimate decision to terminate her – is at least inconsistent with Plaintiff's theory that she was terminated for rejecting David Welch's sexual advances. *See, e.g., Harrison*, 304 F.Supp.2d at 714 ("even if they had not asserted the counterclaims, the defendants probably would have presented evidence of the purported thefts to rebut Mr. Harrison's allegation that his termination stemmed from an illegal conspiracy."); *Sue & Sam Mfg. Co. v. B-L-S Constr. Co.*, 538 F.2d 1048, 1053 (4th Cir. 1976) (holding that a logical relationship existed where the "claims arose at the same time" and were "occasioned" by the same occurrence, such that "[t]he proof of the claim . . . and especially its defense required proof of many of the same facts as were necessary to the proof of the counterclaim."). Given these considerations, "adjudicating the claims and counterclaims at once would advance the 'general purpose' of Rule 13(a) – 'to have all related actions heard at

14

one time,' *Painter*, 863 F.2d at 334 – whereas adjudicating them separately would 'ignore the value of having the same factfinder resolve all issues with an eye for consistency and an appreciation for the total context of the case,' *id.* at 333." *Harrison*, 304 F.Supp.2d at 715.   Based on the foregoing, counterclaims IV, V, and VI are compulsory, thus there is subject matter jurisdiction over them.

### 2.   Negligent and Malicious Defamation and False Light (Counterclaims I-III)

#### a.   Standard of Review

Plaintiff moves to dismiss the defamation and false light counterclaims pursuant to Fed.R.Civ.P. 12(b)(6) on the grounds of statute of limitations and absolute judicial privilege.   The purpose of a motion to dismiss under Rule 12(b)(6) is to test the sufficiency of the complaint.   *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006).   A plaintiff's complaint need only satisfy the standard of Rule 8(a), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief."   Fed.R.Civ.P. 8(a)(2).   "Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief."   *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007).   That showing must consist of more than "a formulaic recitation of the elements of a cause of action" or "naked assertion[s] devoid of further factual

enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted).

At this stage, all well-pleaded allegations in a complaint must be considered as true, *Albright v. Oliver*, 510 U.S. 266, 268 (1994), and all factual allegations must be construed in the light most favorable to the plaintiff, *see Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 (4th Cir. 1999) (*citing Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)).   In evaluating the complaint, unsupported legal allegations need not be accepted. *Revene v. Charles Cnty. Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989).   Legal conclusions couched as factual allegations are insufficient, *Iqbal*, 556 U.S. at 678, as are conclusory factual allegations devoid of any reference to actual events, *United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979).

**b.   Statute of Limitations**

The statute of limitations is an affirmative defense that should only be employed to dismiss claims pursuant to Rule 12(b)(6) when it is clear from the face of the complaint that the claims are time barred. *See Eniola v. Leasecomm Corp.*, 214 F.Supp.2d 520, 525 (D.Md. 2002); see also 5A Charles A. Wright & Arthur R. Miller, Federal Practice & Proc. § 1357, at 352 (1990) ("A complaint showing that the statute of limitations has run on the claim is the most common situation in which the affirmative

defense appears on the face of the pleading," rendering dismissal appropriate).

Plaintiff was terminated from Welch on Rushe on April 27, 2012. She filed her EEOC charge on September 13, 2012 and instituted this action on December 9, 2013. Plaintiff asserts that Defendant cannot rely on events preceding December 9, 2012 to support her defamation and false light claims because the one-year statute of limitations applies. (ECF No. 15, at 8). Defendant responds that Plaintiff's argument is premature because Welch & Rushe does not know the exact timing of Plaintiff's defamatory statements and discovery is necessary to uncover the timing and substance of each of Plaintiff's defamatory statements. (ECF No. 19, at 7). Alternatively, Defendant argues that "to the extent that discovery reveals any statements that did occur prior to December 9, 2012, these statements would not be barred by the one year statute of limitations in light of [the] 'continuing harm rule.'" (*Id.* at 8).

Maryland imposes a one-year statute of limitations on claims for defamation. Md. Code Ann. Cts. & Jud. Proc. § 5-105. The limitations period begins to run on the date the statements are improperly communicated. *See Bagwell v. Peninsula Reg'l Med. Ctr.*, 106 Md.App. 470 (1995). Defendant states in the opposition that the counterclaims allege two sets of defamatory

statements made by Plaintiff: (1) statements made immediately following Plaintiff's termination on April 27, 2012 and "before the filing of any judicial proceedings was contemplated"; and (2) statements made to former Welch & Rushe employees and others after filing her EEOC claims on September 13, 2012. (ECF No. 19, at 4-5). The counterclaim relates back to December 9, 2013, the filing date of the complaint. *See Burlington Indus. V. Milliken & Co.*, 690 F.2d 380, 389 (4th Cir. 1982) (holding that "the institution of plaintiff's suit tolls or suspends the running of the statute of limitations governing a compulsory counterclaim"). To the extent Defendant relies on allegedly defamatory statements made before December 9, 2012 to support the two defamation claims, they are time-barred.

The continuous harm doctrine does not apply to defamation claims. The continuous violation doctrine tolls the statute of limitations where the violations are continuous in nature. *MacBride v. Pushvaian*, 402 Md. 572, 584 (2007). Under this doctrine, a claim is not barred simply because one of more of the violations occurred earlier in time. *Id.* Defendant asserts that "Welch & Rushe has alleged continuous and ongoing defamatory acts of Plaintiff." (ECF No. 19, at 8). But repeated defamations do not constitute a continuing tort. *Lewis v. Gupta*, 54 F.Supp.2d 611, 616 (E.D.Va. 1999). "[R]ather, as courts have uniformly recognized, each separate defamatory

statement itself constitutes a separate and distinct cause of action." *Id.* Accordingly, Defendants cannot rely on statements made before December 9, 2012 to support the two defamation counterclaims. The counterclaims also identify statements made in March 2013, thus the defamation claims will not be dismissed on statute of limitations grounds.

*Citing Robinson v. Vitro Corp.*, 620 F.Supp. 1066, 1070 (D.Md. 1985), Plaintiff asserts that the one-year statute of limitations also applies to claims of false light invasion of privacy where the facts supporting the false light claims are the same as those used to support the defamation claim. In applying the one-year statute of limitations to the false light invasion of privacy claim, *Robinson*, 620 F.Supp. at 1070, relied exclusively on the reasoning in *Smith v. Esquire*, 494 F.Supp. 967, 970 (D.Md. 1980), "that the tort of false light invasion of privacy is so similar to defamation that the one-year statute of limitations governing defamation is to be applicable in false light cases as well." Plaintiff fails to acknowledge, however, that the Maryland Court of Special Appeals later rejected the reasoning in *Smith*, holding that false light claims should be treated like other tort claims and subject to the three year statute of limitations. *See Allen v. Bethlehem Steel Corp.*, 76 Md.App. 642 (1988); *see also Smith v. McGraw*, Civil Action No. 10-cv-02310-AW, 2012 WL 603238, at *9 (D.Md. Feb. 23, 2012)

(noting that there is some disagreement as to whether the statute of limitations governing claims for false light invasion of privacy is the same as the one-year limitations period for defamation claims, but declining to address the issue). The court in *Allen* reasoned:

> We disagree with *Smith*. What the district court judge said in *Smith* may be true, but the Maryland statute of limitations is vividly clear. An action for libel and slander shall be filed within one year of the date it accrues. Courts Art. § 5-105. Other tort actions shall be filed within three years of the date they accrue. Courts Art. § 5-101. Nowhere in § 5-101 does it provide an exception for "false light" cases. Even though we recognize the district court judge's view as to how the statute of limitations will be avoided, that "loophole" must be plugged by the Legislature. Limitation statutes are generally strictly construed. *Decker v. Fink*, 422 A.2d 389 (Md.Ct.Spec.App. 1980), *cert. denied*, 289 Md. 735 (Md. 1981). Courts Art. § 5-101 means presumably what it says, and we decline to rewrite it so as to proscribe the bringing of a "false light" case after a period of one year.

*Allen*, 76 Md.App. at 649.

At least one court in this district has since applied the three-year statute of limitations to a false light invasion of privacy claim. Specifically, in *Richardson v. Selective Ins. Grp., Inc.*, Civil Action No. RDB 06-2594, 2007 WL 1657423, at *5-6 (D.Md. May 31, 2007), Judge Bennett noted the disagreement between *Smith* and *Allen*, found the reasoning in *Allen*

persuasive, and applied the three-year statute of limitations to a claim that defendants tortiously interfered with prospective economic advantage by providing defamatory references to plaintiff's prospective employers. *See also Hovatter v. Widdowson*, No. Civ. CCB-03-2904, 2004 WL 2075467, at *8 (D.Md. Sept. 15, 2004) ("The scope of [plaintiff's] invasion of privacy false light claim initially is limited by the applicable statute of limitations. Maryland applies the general three-year statute of limited under § 5-101 to such claims."). As found by Judge Bennett, *Allen* is persuasive and was decided by a Maryland court interpreting state law. Thus, the three year statute of limitation applies to the false light claim and Defendant can rely on allegations preceding December 9, 2012 to support this claim.

### c. Absolute Judicial Privilege

Plaintiff argues that "[s]tatements allegedly made by Ms. Long in seeking support for her EEOC claims are subject to Maryland's absolute judicial privilege and thus Defendant's defamation and false light claims based on such statements must be dismissed." (ECF No. 15, at 7).[5]  In the case of *Norman v.*

---

[5]  The only allegation in the counterclaim regarding defamatory statements made after Plaintiff was terminated but before she filed her EEOC charge is that "[a]fter Ms. Long was terminated, she began making false accusations of harassment and discrimination." (ECF No. 7, at 9).  Although Plaintiff broadly asserts that absolute judicial privilege applies to all of the

*Borison*, 418 Md. 630 (2011), the Court of Appeals of Maryland explored the contours of the absolute judicial privilege. The court observed that "witnesses, parties, and judges" enjoy "absolute immunity from civil liability," for statements made in a judicial proceeding, "even if the statement is wholly unrelated to the underlying proceeding." *Id.* at 650. The privilege also extends to statements made in connection with quasi-judicial proceedings, such as administrative proceedings, if the proceeding satisfies the two part test of *Gersh v. Ambrose*, 219 Md. 188 (1981). *Gersh* dictates that, in deciding whether a proceeding gives rise to an absolute privilege, a court must consider "'(1) the nature of the public function of the proceeding and (2) the adequacy of procedural safeguards which will minimize the occurrence of defamatory statements.'" *Norman*, 418 Md. at 652. The EEOC constitutes a quasi-judicial agency with the authority to administer federal employment discrimination laws, investigate claims by aggrieved parties, and bring actions itself. *See* 42 U.S.C. § 2000e-5(b).

---

allegedly defamatory statements, Plaintiff argues in the motion and the reply brief that statements made before she filed the EEOC charge in September 2012 are time-barred. As explained above, Defendant cannot rely on statements made prior to December 9, 2012 to support the two defamation claims, but it *can* rely on such statements to support the false light claim, as the three-year statute of limitations applies. Plaintiff has not briefed the issue of whether absolute judicial privilege would apply to allegedly defamatory statements made prior to the institution of EEOC proceedings.

Proceedings before the EEOC give rise to an absolute privilege. *See, e.g., Shabazz v. PYA Monarch, LLC*, 271 F.Supp.2d 797, 804 (E.D.Va. 2003) ("based on the nature of the EEOC proceedings, its power to subpoena documents, information and witnesses, and its power to file a lawsuit at the conclusion of its investigation, makes the proceedings before the EEOC quasi-judicial. In addition, the requirement that an aggrieved party file a charge with the EEOC as a prerequisite to filing a lawsuit lends further support to the quasi-judicial nature of the proceedings."); *Booth v. Total Health Care, Inc.*, 880 F.Supp. 414, 415-16 (D.Md. 1994) (finding statements made to the Maryland Human Relations Commission in defending against plaintiff's sex discrimination complaint were absolutely privileged in light of the nature of proceedings and the fact that the Commission's procedures provide adequate procedural safeguards against the occurrence of defamatory statements).

Defendant contends that the allegedly defamatory statements were made extrinsic to the EEOC proceeding and that absolute privilege does not apply to these statements. Plaintiff responds that the allegations in Defendant's own counterclaims reveal that "Ms. Long and her past counsel were pursuing testimonial support from potential witnesses for her EEOC and judicial claims against Defendant[s]." (ECF No. 24, at 6). Specifically, the allegations in the counterclaim state that in

about March 2013, after Plaintiff filed an EEOC charge, Ms. Long contacted Eric Craddock, a former Welch & Rushe manager. "Mr. Craddock reported to Welch & Rushe that Ms. Long disclosed the nature of her allegations against Welch & Rushe, and that the purpose of her call was to garner support of her [] allegation that her termination was in retaliation for Ms. Long's rejection of Mr. Welch's alleged sexual advances." (ECF No. 7, at 9). Defendant further asserts that Ms. Long has similarly contacted other current and former employees during this same time period and that "[o]n her behalf, her prior counsel, Katz, Marshall & Banks LLP likewise contacted former managers of former Welch & Rushe." (*Id.*). Defendant maintains that "Ms. Long and/or her agents also contacted current employees at Welch & Rushe during this same time period under suspicious circumstances in a covert attempt to uncover the current employer of several former Welch & Rushe managers, upon information and belief, in order to communicate her false allegations and garner false testimony in support for those false allegations."

As explained in *Norman*, 418 Md. at 653, the absolute privilege applies to some statements made extrinsic to a judicial or quasi-judicial proceeding. Generally, these extrinsic statements occur in three categories: (1) statements made with the direct purpose or effect of producing a judicial or quasi-judicial proceeding; (2) statements "prepared for

possible use in connection with a pending judicial proceeding, but which remain unfiled at the time of the alleged injury"; and (3) statements that are not designed necessarily to produce a proceeding or cause one to be "filed," but which are connected contextually to a pending or ongoing proceeding.    Plaintiff already had filed the EEOC charge at the time the allegedly defamatory statements were made to current and former Welch & Rushe employees in March 2013.    The court in *Norman*, 418 Md. at 656, explained that absolute privilege applies to statements made by parties outside the quasi-judicial proceeding when: "(1) the contemplated or ongoing proceeding fulfills *Gersh*, and (2) the context of the statement demonstrates that it was made during the course of the proceeding."    *Id.* at 657-58.    A party "does not need to demonstrate the relevance of a challenged out-of-court statement to the contemplated or underlying proceeding."    *Id.* at 658 n.17.    She must show, however, "that the alleged defamatory statement was made in a context – *e.g.,* settlement negotiations or a letter memorializing a conversation regarding visitation rights – connected sufficiently to a proceeding, so that a court may conclude that statement was made 'during the course of the proceeding.'"    *Id.* at 658.    With respect to attorneys of record in a quasi-judicial proceeding, "Maryland caselaw adds the requirement of relevance of the

statement to the proceeding before an absolute privilege may apply." *Id.* at 659.

The issue here is whether the alleged defamatory statements were made in a context connected sufficiently to the EEOC proceeding. *See Holt v. Camus*, 128 F.Supp.2d 812, 816 (D.Md. 1999) ("the absolute privilege which bars a [party's] statement from becoming the basis of a defamation action also bars those statements from forming the basis of a false light invasion of privacy claim."). In *Norman*, the court explained:

> [w]e assess the context of the statement by asking, among other things: what was the overall or general reason for the instrument or letter (but not the motive of the challenged statement itself, *see* English rule); what was the [party] doing when he or she made the statement; and to whom did he or she make the statement.

*Norman,* 418 Md. at 658. Defendant argues that absolute judicial privilege should not attach because "the Counterclaim only alleges that *one* of Welch & Rushe's former employees, and not Welch & Rushe, believed that the purpose of the Plaintiff's call was to garner witness support." (ECF No. 19, at 7). Defendant also maintains that "[i]n order to determine the context and reasons for contacting the third parties, discovery is required. . . . [D]iscovery is necessary to explore the reasons for her statements, what statements were made, and to whom she made the statements." (*Id.*). Although Plaintiff's motive for the

26

alleged defamatory statements is irrelevant for purposes of determining whether absolute judicial privilege attaches, the context during which the defamatory statements were made must be connected sufficiently to the EEOC proceeding.

From the allegations in the counterclaim, the exact context during which the alleged defamatory statements were made is unclear.   Although Defendant states that Ms. Long contacted current and former Welch & Rushe employees in March 2013 to garner testimony to support her allegations, Defendant also contends that she contacted former employees to ascertain their current employer.   Unclear at this stage is the exact content and context of the conversations with current and former employees, the purpose of the contact with such individuals, and at what stage of the EEOC proceedings the parties were involved. Moreover, cases that have applied absolute judicial privilege to defamatory statements have done so at the summary judgment stage, after discovery had occurred.   In *Shabazz*, 271 F.Supp.2d at 804, the court granted summary judgment, finding that communications with the EEOC regarding plaintiff's termination were absolutely privileged because they were communications made with respect to a quasi-judicial proceeding.   In that case, however, the EEOC required the defendant to furnish a written position statement and produce numerous documents, including the company's investigation and witness statements it had obtained.

Similarly, in *Adams v. Peck*, 288 Md. 1, 6 (1980), a case on which Plaintiff relies, the court upheld summary judgment, concluding that absolute privilege applied to a defamatory statement published in a document which was prepared for use by an attorney in connection with a pending judicial proceeding but which had not been filed in that proceeding.   In that case, the defamatory statement was published in a letter from a psychiatrist to an attorney who was then representing the mother in pending divorce litigation.   The psychiatrist's evaluation and recommendation were sought for the purpose of determining whether there were probative facts and opinions sufficient to justify raising, in the pending divorce litigation, the issue of a modification of the father's visitation rights.   The court held that "[u]nder these circumstances, it is manifest that the psychiatrist's letter was directly related to that judicial proceeding, and that the allegedly defamatory statement contained in the letter was published during the course of that judicial proceeding." *Id.* at 8.   Here, the context of Plaintiff's communications with current and former Welch & Rushe employees is unclear vis-à-vis the ongoing EEOC proceeding. *See, e.g., Holt*, 128 F.Supp.2d at 816 (denying motion to dismiss in part where the context of the alleged defamatory remarks from an attorney to a judge was unclear).   Similarly, for the privilege to attach to statements made by Plaintiff's attorneys

28

to these individuals, Plaintiff needs to show that the statements had some "rational, articulable relevance or responsiveness to the proceeding." *Norman*, 418 Md. at 660; *Hurst v. Jiffy Lube*, No. CIV. A. 00-CV-133, 2000 WL 1790112, at *6 (E.D.Pa. Dec. 6, 2000) (granting summary judgment on a defamation claim and holding that "[defendant's] statements to the EEOC regarding [plaintiff's] managerial abilities were relevant and material to the legal proceeding and are privileged). This information has not yet been ascertained, thus dismissal is inappropriate.

### B.   Plaintiff's Motion to Strike Affirmative Defenses

Plaintiff moves to strike the following affirmative defenses: statute of limitations and/or doctrines of waiver, laches or estoppel (2); good faith and non-legitimate non-discriminatory reasons (3); failure to exhaust administrative remedies (4); failure to mitigate damages (7); attorneys' fees (9); and reservation of right to amend affirmative defenses as additional facts become known (10).[6]

Plaintiff asserts that defenses two, three, four, and seven are "stated in such a conclusory manner as to prohibit fair notice of defenses or grounds asserted upon." (ECF No. 16, at 2). Plaintiff appears to be arguing that these four affirmative

---

[6] These numbers correspond to the number of the affirmative defense in Defendant's answer.

defenses fail to satisfy the pleading requirements set forth by the Supreme Court of the United States in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). Defendant argues, in response, that *Twombly* and *Iqbal* do not apply to affirmative defenses. Defendant recognizes that courts in this district have applied the *Iqbal* and *Twombly* standard to affirmative defenses, but point to courts within this district and in the Fourth Circuit that have also held otherwise. (ECF No. 20, at 3-4).

Defendant is correct that neither *Twombly* nor *Iqbal* expressly addressed the pleading requirements applicable to affirmative defenses, and district courts throughout the country have since debated the issue. The majority of district courts, including those within this circuit, however, have concluded that the *Twombly-Iqbal* approach applies to affirmative defenses. *See, e.g., Bradshaw v. Hilco Receivables, LLC*, 725 F.Supp.2d 532, 536 (D.Md. 2010); *Racick v. Dominion Law Assocs.*, 270 F.R.D. 228, 233 (E.D.N.C. 2010). The undersigned adopts the majority view that affirmative defenses must meet the *Twombly* and *Iqbal* standards because defendants should be held to the same pleading standard as plaintiffs and boilerplate defenses require counsel to conduct unnecessary discovery. *See Bradshaw*, 725 F.Supp.2d at 535-36; *see also Barry v. EMC Mortg.*, Civil Action No. DKC 10-3120, 2011 WL 4352104, at *3-4 (D.Md. Sept.

30

15, 2011) (explaining rationale for applying *Twombly* and *Iqbal*
standards to affirmative defenses). Affirmative defenses must
"ensure that an opposing party receives fair notice of the
factual basis for an assertion contained in a [] defense."
*Haley Paint*, 279 F.R.D. at 336 (*quoting Bradshaw*, 725 F.Supp.2d
at 536). Fed.R.Civ.P. 12(f) states that the court "may strike
from a pleading an insufficient defense or any redundant,
immaterial, impertinent, or scandalous matter."

### 1.   Statute of Limitations and/or Doctrines of Waiver, Laches, or Estoppel

As to the statute of limitations defense, Plaintiff argues
that "Defendant fails to provide any factual support indicating
that Ms. Long's claims were not filed within the applicable time
limitations established under Title VII, nor is there any
indication that there are any other applicable statutes of
limitations." (ECF No. 16, at 4). Defendant argues that the
nature of the statute of limitations defense is apparent from
Plaintiff's complaint itself, thus Plaintiff is on notice
regarding the contours of this defense. As Defendant points
out, an employee has 300 days from the discriminatory act in
which to file a charge with the EEOC. *See* 42 U.S.C. § 2000e-5.
Plaintiff filed her charge with the EEOC on September 13, 2012.
(ECF No. 20-1). The Notice of Right to Sue letter was issued on
September 26, 2013. (ECF No. 20-2). Plaintiff filed the

complaint on December 9, 2013, within ninety (90) days of receiving the right to sue letter. Defendant argues that "Plaintiff's claim that she was transferred out of her position in September 2011 is time-barred given that she did not file her charge until September 13, 2012, more than 300 days after the alleged transfer." (ECF No. 20, at 8-9). Defendant misreads Plaintiff's complaint. The complaint states that Ms. Long was transferred "[t]he day after Ms. Long had to scream to get away from Mr. Welch," which happened sometime in *December* 2011. (ECF No. 1 ¶¶ 19-20). It does not appear that this claim is time-barred. Defendant also argues that some of the other claims in the complaint may be time-barred because Plaintiff alleges harassment dating back to February of 2011, but did not bring her charge with the EEOC until September 13, 2012. The claims that are outside the 300-day period are not necessarily time-barred because Plaintiff alleges continuing harassment by David Welch. The "continuing violation" theory "allows for consideration of incidents that occurred outside the time bar when those incidents are part of a single, ongoing pattern of discrimination." *Holland v. Washington Homes, Inc.*, 487 F.3d 208, 219 (4th Cir. 2007) (*citing Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 118 (2002)). Although the viability of the statute of limitations defense remains to be seen, this defense will not be stricken. The statute of limitations

defense is "contextually comprehensible" when viewed in light of Plaintiff's factual pleadings. *See Warren v. Tri Tech Laboratories, Inc.*, Civil Action No. 6:12-cv-00046, 2013 WL 2111669, at *7 (W.D.Va. May 15, 2013) ("indeed, [p]laintiff's claimed incomprehension of the basis of Defendant's affirmative defenses ignores the allegations of his own complaint.").

The affirmative defenses of laches, waiver, and estoppel, however, require a different conclusion. The judicially created doctrine of laches "may be applied by a court to bar a suit in equity that has been brought so long after the cause of action accrued that the court finds that bringing the action is unreasonable and unjust." *Lyons P'ship, L.P. v. Morris Costumes, Inc.*, 243 F.3d 789, 798 (4th Cir. 2001). But when a cause of action is "brought pursuant to a statute for which Congress has provided a limitations period, a court should not apply laches to overrule the legislature's judgment as to the appropriate time limit to apply for actions brought under the statute." *Id.; see also Haley Paint*, 279 F.R.D. at 337. 42 U.S.C. § 2000e-5(e)(1) provides the applicable statute of limitations for Title VII claims. Accordingly, the laches defense is inapplicable and will be stricken. With respect to the waiver and estoppel defenses, Defendant has not provided any factual bases for these affirmative defenses and they will be stricken. *See, e.g., Barry*, 2011 WL 4352104, at *4 (striking

waiver and estoppel defenses where defendant merely set "forth conclusory legal statements wholly devoid of any factual content to support them"); *Racick v. Dominion Law Assocs.*, 270 F.R.D. 228, 237 (E.D.N.C. 2010) (striking "estoppel" and "waiver" defenses as "bare legal conclusion[s]").

### 2. Failure to Exhaust Administrative Remedies

As a fourth affirmative defense, Defendant states that "Ms. Long failed to comply with the procedural and/or administrative prerequisites for asserting discrimination under federal and state law." (ECF No. 7, at 6). Plaintiff asserts that "Defendant has not provided any grounds upon which to support this assertion thus failing to impart fair notice to Ms. Long." (ECF No. 16, at 6). Plaintiff also points out that to the extent Defendant argues that she has failed to satisfy certain conditions precedent to bringing suit, Fed.R.Civ.P. 9(c) states that "when denying that a condition precedent has occurred or been performed, a party must do so with particularity." Defendant asserts that the failure to exhaust administrative remedies defense is based on facts that are "within [Plaintiff's] knowledge (specifically, what actions she claims to have been discriminatory or retaliatory, and when she filed her charge and lawsuit), and therefore, Welch & Rushe need not allege additional facts in support of this affirmative defense." (ECF No. 20, at 9). Defendant's argument is unpersuasive.

Defendant received the EEOC Charge – which it included as an exhibit to its opposition – and this document identified the discriminatory grounds Plaintiff alleged, namely sex and retaliation. (ECF No. 20-1). There is no indication that Defendant is unaware of what happened in the administrative context before Plaintiff filed her complaint in federal court. Defendant will have fourteen (14) days to amend the answer to plead facts to support the failure to exhaust affirmative defense. *See Haley Paint*, 279 F.R.D. at 331 ("when affirmative defenses are stricken, the defendant should normally be granted leave to amend."); *Certain Underwriters at Lloyd's, London v. R.J. Wilson & Assocs., Ltd.*, Civil No. CCB-11-1809, 2012 WL 2945489, at *5-6 (D.Md. July 17, 2012) (granting leave to amend the answer to plead facts to support affirmative defenses).

### 3.   Good Faith and Legitimate Non-Discriminatory Reasons

As a third affirmative defense, Defendant states that "[a]ll actions taken in connection with Ms. Long and her employment were made in good faith and for legitimate, nondiscriminatory, non-retaliatory, and non-pretextual reasons." (ECF No. 7, at 6). Defendant acknowledges that this defense actually encompasses two defenses: (1) good faith affirmative defense to punitive damages under Title VII; and (2) legitimate non-discriminatory reasons. Although Plaintiff argues that the court should strike this affirmative defense in full, the

35

arguments in her motion regarding the third affirmative defense challenge only the "good faith" defense.  (ECF No. 16, at 5-6). Plaintiff asserts that "Defendant's mere conclusory statement that it acted in good faith fails to provide any basis for its applicability as a defense and denies Ms. Long of fair notice of the defense." (*Id.* at 6).  Defendant takes the position that the factual allegations in Plaintiff's complaint together with the fifth and sixth affirmative defenses support the good faith defense.  Specifically, Defendant includes as a fifth affirmative defense that "Ms. Long unreasonably failed to take advantage of any preventive or corrective opportunities provided by Welch & Rushe or to otherwise avoid harm." (ECF No. 7, at 6).  The sixth affirmative defense states that "[w]hile not admitting any unlawful conduct occurred, Ms. Long did not engage in any protected activity or at any time inform Welch & Rushe that she opposed any alleged unlawful conduct." (*Id.*). Defendant argues that "[a]ll of these facts, including those contained in other Affirmative Defenses, are facts that likewise support its Third affirmative defense that it acted in good faith during her employment." (ECF No. 20, at 11).

Defendant's arguments are unavailing.  The other affirmative defenses in the answer do not provide factual content regarding how Defendant acted in good faith to comply with the obligations under Title VII.  The fifth affirmative

defense states that Ms. Long failed to take advantage of any preventive or corrective opportunities provided by Welch & Rushe, but fails to explain what those preventive or corrective opportunities were.   "[A]n employer may not be vicariously liable for the discriminatory employment decisions of managerial agents where these decisions are contrary to the employer's good-faith efforts to comply with Title VII." *Kolstad v. Am. Dental Assoc.*, 527 U.S. 526, 545 (1999).  Defendants have not included any factual content to explain their good faith efforts.  *See, e.g., Barry*, 2011 WL 4352104, at *5 (striking defense of good faith compliance with all applicable laws as conclusory and devoid of any factual content to support it); *Francisco v. Verizon South, Inc.*, No. 3:09cv737, 2010 WL 29901589, at *8 (E.D.Va. July 29, 2010) (granting a plaintiff's motion to strike a defense of "good faith efforts to comply with all applicable laws, rules, and regulations").  Defendant will have fourteen (14) days to amend the answer to plead facts to support the good faith affirmative defense.

### 4.   Failure to Mitigate Damages

Defendant's seventh affirmative defense is that Ms. Long failed to mitigate her damages.  Title VII claimants have a statutory duty to mitigate damages resulting from their employer's discriminatory adverse employment actions.  42 U.S.C. § 2000e-5(g).  The defendant bears the burden of proving that a

claimant has failed to mitigate damages stemming from a Title VII violation. *Miller v. AT&T Corp.*, 250 F.3d 820, 838 (4th Cir. 2001). Plaintiff argues that "[t]here are no facts or inferences that can be drawn from any of the pleadings that suggest this defense is plausible." (ECF No. 16, at 6). Defendants assert that "[i]n the discriminatory context, the facts supporting whether a former employee who claims harassment and retaliatory discharge has properly mitigated her damages (such as by seeking other employment) are only within the knowledge of Plaintiff at this early stage of the case." (ECF No. 20, at 13). Defendant states "[a]t this stage in the litigation, Welch & Rushe does not yet possess additional facts to know to what degree Long has mitigated or failed to mitigate her damages." (*Id.* at 14). Defendant's arguments are persuasive. Although cursory defenses are usually insufficient, the failure to mitigate defense will not be stricken considering that Defendant is not in a position at this stage to know the steps Plaintiff took to mitigate damages.

### 5.  **Ninth And Tenth Affirmative Defenses**

Defendant asserts as a ninth affirmative defense that it is entitled to recover reasonable attorneys' fees because this action, "in whole or in part, is unreasonable, frivolous, vexatious, without merit and/or has not been brought or asserted in good faith." (ECF No. 7, at 7). Defendant includes as a

tenth affirmative defense a reservation of right to amend its affirmative defenses as additional facts become known during the course of discovery. As Plaintiff points out, these are not affirmative defenses, and Defendant acknowledges as much. Defendant states that it included the ninth and tenth defenses to put Plaintiff on notice that it will be seeking attorneys' fees and will seek leave to amend the answer if it becomes necessary. Because these are not affirmative defenses, they will be stricken.

## III. Conclusion

For the foregoing reasons, Plaintiff's motion to dismiss counterclaims will be denied. The motion to strike affirmative defenses will be granted in part and denied in part. A separate order will follow.

_____/s/_____
DEBORAH K. CHASANOW
United States District Judge